**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OLSHAN FROME WOLOSKY LLP,<br>Plaintiff,<br>-against-<br>BRETT RATNER,<br>Defendant. | Index No.:<br>**COMPLAINT** |

Olshan Frome Wolosky LLP (hereinafter, "Olshan" or "Plaintiff"), as and for its Complaint against Brett Ratner ("Ratner" or "Defendant"), hereby alleges as follows:

NATURE OF THE ACTION

1. This is an action to enforce Bret Ratner's obligations to pay for legal services provided to him by Plaintiff Olshan.

2. Ratner is a successful Hollywood director and producer. His body of work includes directing *X-Men: The Last Stand* and the *Rush Hour* film series. According to Wikipedia, the motion pictures that Ratner has directed have earned over $2 billion at the global box office.[1]

3. As set forth below, Ratner agreed to bear responsibility for all amounts sought in this action as set forth in two materially identical Engagement Letters and the accompanying Terms of Engagement (collectively, the "Engagement Letter") that he signed and returned to Olshan.

4. The Engagement Letter complies with the Written Letter of Engagement requirements set forth in 22 N.Y.C.R.R. § 1215.

5. Ratner signed the first Engagement Letter on or about June 11, 2019.

[1] *See* https://en.wikipedia.org/wiki/Brett Ratner

6. Olshan competently rendered legal services in good faith to and on behalf of Ratner, and such services were accepted without objection.

7. Ratner signed an additional engagement letter with Olshan on or about September 22, 2020 ("the 2020 Engagement Letter") that contained the same material terms as the version dated June 11, 2019. The difference between the two letters are that the first one was signed only by Ratner in his individual capacity, whereas Ratner signed the second one both in his individual capacity and also on behalf of an entity named BRP LLC. Because the key terms are the same, the 2019 and 2020 engagement letters are collectively referenced herein as the "Engagement Letter." However, for purposes of clarity, of the total amount sought in this action, only $10,172 was billed pursuant to the 2020 Engagement Letter.

8. For a time, Ratner made payments to Olshan as per the terms of the Engagement Letter, but eventually he ceased doing so.

9. Despite receiving services from Olshan as well as the benefit of such services, Ratner has failed and refused to pay Olshan at least $270,834.02 for services rendered and disbursements incurred by Olshan in the course of the representation.

10. The Terms of Engagement attached and incorporated into to the Engagement Letter by reference provided that the failure to pay any amounts due within thirty days of receipt of an invoice would result in a late charge of one percent (1%) per month ("late fees").

11. As of the time of the drafting of this pleading, the amount of late fees exceeds $90,000.00, making the total current balance due and owing to Olshan to be <u>$360,834.02</u>.

12. The amount listed in the prior paragraph, and throughout this pleading, does NOT include attorneys' fees and collection costs, all of which Olshan is entitled to recover pursuant to

the Engagement Letter, as well as additional, ongoing late fee calculations and interest. All of these remedies are demanded and sought through this action.

JURISIDCTION, PARTIES AND VENUE

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) because it is between citizens of different States, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

14. Olshan is a New York limited liability partnership engaged in the practice of law that maintains its principal place of business in New York County at 1325 Avenue of the Americas.

15. All of the members of Olshan, including all general and limited partners, are citizens of New York, New Jersey or Connecticut. None are citizens of the State of California.

16. Upon information and belief, Ratner is a citizen of the state of California and maintains a place of business at 16030 Ventura Boulevard #380, Encino, California, 91436.

17. Personal jurisdiction exists over Ratner in this jurisdiction because in the Engagement Letter, he agreed that all disputes would be "resolved by a court sitting in New York County, either state or federal, and each of us consent to the exclusive jurisdiction of such a court."

18. Personal jurisdiction further exists over Ratner because, upon information and belief, he transacted business within the State of New York and/or regularly does or solicits business in New York, and otherwise satisfies the personal jurisdiction requirements of CPLR §302.

19. This Court has personal jurisdiction over Defendant pursuant to Rule 302(a)(1) of the New York Civil Practice Law and Rules.

20. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because Olshan maintains its principle place of business in the County of New York, State of New York and rendered services to Defendants in this district.

21. Venue is also proper based on Defendants' consent in the Engagement Letter.

FACTS

22. As a successful producer of major motion pictures, Ratner is a sophisticated and experienced entrepreneur, well-versed and seasoned in negotiating and business-dispute tactics.

23. Ratner retained Olshan beginning in June 2019 to provide legal services relating to several business ventures he entered or was contemplating entering. The legal services Olshan provide included corporate advice as well as enforcing his profit-sharing rights as a partner in an entity named Lola Visual Effects, LLC ("Lola"). Olshan's initial task was to demand information from Lola that was being withheld from Ratner which allowed him to confirm whether he had received the proper amount of profit participation.

24. After Olshan made such demand on behalf of Ratner, Lola sued Ratner in Superior Court in California to compel mediation. Olshan appeared and moved to dismiss the action and compel arbitration.

25. Olshan prevailed in court and represented Ratner in his subsequent arbitration with Lola styled *Brett Ratner v. Lola Visual Effects, LLC et al.* ("the Lola Arbitration") which was conducted before an arbitral body named Signature Resolution LLC ("the arbitrator").

26. Ratner ceased paying Olshan the fees that were generated by Olshan's work in the Lola Arbitration and other unrelated corporate matters.

27. Olshan continued to represent Ratner through late 2021.

28. Despite multiple requests, Ratner also failed to pay the arbitrator for fees due in the Lola Arbitration.

29. As a result of Ratner's non-payment, the arbitrator ultimately issued an "Order to Show Cause Re: Dismissal of Arbitration" ("Order to Show Cause") requiring Ratner to explain

why "the arbitration should not be dismissed for failure to abide by the administrative orders, to wit, payment of arbitration fees."

30. On behalf of Ratner, Olshan provided a response to the Order to Show Cause on September 3, 2021 stating Ratner's reasons for non-payment and proposing a schedule for payment until October 1, 2021 or "eighty days prior to reset hearing dates, whichever is sooner."

31. On September 9, 2021, the arbitrator ordered Ratner to pay $69,300 by September 13, 2021 for the overdue balance on the arbitrator's fees.

32. Ratner also failed to pay the forensic accountants in the Lola Arbitration for months which resulted in their discontinuation of their work until their invoices were paid.

33. Substitute counsel appeared on behalf of Ratner on September 9, 2021.

34. At the time the arbitrator suspended the arbitration pending payment and Ratner obtained new counsel, the parties were still in document discovery.

35. After substituting out, Olshan could have, but did not assert an attorney's lien on its files related to the Lola Arbitration. In fact, Olshan did not withhold any information pending payment from Ratner but instead actively cooperated with Ratner's incoming counsel by providing the complete file as well as making Olshan attorneys available for multiple telephone calls and responding promptly to all questions and requests for assistance. This was done based on additional assurances from Ratner, which were accepted in good faith, that he would pay Olshan's invoices.

36. Olshan received multiple telephone calls and written e-mails from Ratner assuring that payment of Olshan's past-due invoices would be forthcoming. Ratner promised imminent payment in writing on multiple occasions throughout 2021, including representing to Olshan via e-mail that, "I assure you it will all be paid," and agreeing to "pay outstanding amounts not later than October 31, 2021."

37. Ratner did not prevail in the Lola Arbitration. The arbitrator ruled that "in each instance of wrongdoing alleged by Ratner, there is and was no basis for the allegation."

38. At all relevant times, Olshan provided invoices, *i.e.,* regular monthly statements of account for its services and Ratner never objected to such statements. Ratner did not contemporaneously dispute any of the fees or expenses contained on the invoices.

39. In February 2022, Ratner again advised Olshan would receive payment for legal services amounting to approximately $70,000 related to corporate work performed by Olshan for Ratner.

40. None of Ratner's assurances came true.

41. Despite a proper demand by Olshan for payment of the amount due, Ratner has refused to pay same.

42. At the time of timing of the filing of this litigation, Ratner has unpaid invoices of $175,683.93 for the Lola arbitration; $84,978.09 in general corporate work and $10,172.00 in other business work for a total of $270,834.02, plus contractual late fees in an amount exceeding $90,000.00.

## AS AND FOR A FIRST CAUSE OF ACTION (BREACH OF CONTRACT)

43. Olshan repeats and realleges each and every allegation above as though fully set forth herein.

44. Olshan was formally retained by Ratner in June of 2019 to provide legal services in connection with the Lola Arbitration and general corporate matters.

45. In the Engagement Letter, Ratner agreed to compensate Olshan at the rates set forth therein for Olshan's attorneys' time and any out-of-pocket disbursements incurred.

46. The Engagement Letter provided that "your instructing us to act on your behalf in connection with this engagement will constitute your full acceptance of the terms of this letter and its accompanying memorandum."

47. The Engagement Letter further provided that in the event of litigation between the parties to between the parties to the Engagement Letter, the prevailing party would recover reasonable attorneys' fees and other costs of collection even if a party represents itself or appears as co-counsel representing itself in litigation.

48. The Engagement Letter provided that New York law would govern any disputes thereunder.

49. Olshan did in fact provide legal services to Ratner, including serving as counsel for Ratner in the Lola Arbitration and also in corporate matters for Ratner's various business interests.

50. Olshan has not been paid all of its fees and out-of-pocket disbursements incurred in its representation of Ratner.

51. Despite due demand, Ratner failed and refused to pay Olshan the sum of $270,834.02.

52. By reason of the foregoing, Ratner breached his contractual obligations to Olshan as set forth in the Engagement Letter.

53. Olshan is contractually entitled to collect late fees from Ratner in an amount that exceeds $90,000.00 as of the date of the filing of this action.

54. Olshan has incurred damages of and is entitled to recover the sum of at least $360,834.02 plus attorneys' fees, collection costs, prejudgment interest and ongoing late fee calculations.

AS AND FOR A SECOND CAUSE OF ACTION (UNJUST ENRICHMENT)

55. Olshan repeats and realleges each and every allegation above as though fully set forth herein.

56. At Ratner's request, Olshan conferred a valuable benefit upon him, which he duly accepted.

57. The fair and reasonable compensation for the work and services performed by Olshan at the specific instance and request of Ratner, and for the benefit of Ratner, as well as disbursements incurred on Ratner' behalf, for which Ratner has not paid, is the sum of $270,834.02 together with late fees, reasonable attorneys' fees, collection costs and prejudgment interest.

58. By reason of the foregoing, Ratner is liable to Olshan in the sum of $360,834.02 plus reasonable attorneys' fees, collection costs, prejudgment interest and ongoing late fee calculations.

AS AND FOR A THIRD CAUSE OF ACTION (QUANTUM MERUIT)

59. Olshan repeats and realleges each and every allegation above as though fully set forth herein.

60. Olshan rendered valuable services to Ratner and incurred expenses on his behalf, all of which Ratner accepted.

61. The fair and reasonable value of such services and disbursements for which Olshan has not been paid is $270,834.02.

62. Ratner has failed and refused to compensate Olshan for the full value of these services and expenses, although payment has been duly demanded.

63. By reason of the foregoing, Ratner is liable to Olshan for the balance of such fees and disbursements in the sum of $360,834.02 plus reasonable attorneys' fees, collection costs, prejudgment interest and ongoing late fee calculations.

AS AND FOR A FOURTH CAUSE OF ACTION (ACCOUNT STATED)

64. Olshan repeats and realleges each and every allegation above as though fully set forth herein.

65. Olshan rendered monthly statements of account setting forth an unpaid balance of legal fees and disbursements.

66. Ratner retained and accepted many or all of the statements of account and did not contemporaneously contest or object to the statements of account rendered by Olshan.

67. By reason of the foregoing, an account has been stated between Plaintiff and Ratner in the amount of $270,834.02.

68. Ratner has not paid the amount of the account stated and therefore is liable to Olshan for $270,834.02 plus reasonable attorneys' fees, late fees, collection costs, prejudgment and interest.

**WHEREFORE**, Olshan demands judgment against Ratner as follows:

(i) On the First Cause of Action, judgment in an amount to be determined at trial but not less than $360,834.02 together with an additional award of reasonable attorneys' fees, collection costs, prejudgment interest and ongoing late fee calculations; and

(ii) On the Second Cause of Action, judgment in an amount to be determined at trial but not less than $360,834.02 together with an additional award of reasonable attorneys' fees, collection costs, prejudgment interest and ongoing late fee calculations; and

(iii) On the Third Cause of Action, judgment in an amount to be determined at trial but not less than $360,834.02 together with an additional award of reasonable attorneys' fees, collection costs, prejudgment interest and ongoing late fee calculations; and

(iv) On the Fourth Cause of Action, judgment in an amount to be determined at trial but not less than $270,834.02, together with an additional award of late fees, reasonable attorneys' fees, collection costs and prejudgment interest; and

(v) Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
September 29, 2023

**OLSHAN FROME WOLOSKY LLP**

By: *__/s/ Thomas J. Fleming__*

Thomas J. Fleming
Scott Shaffer
1325 Avenue of the Americas
New York, NY 10019
Tel: 212.451.2300
E-mail: tfleming@olshanlaw.com;
sshaffer@olshanlaw.com

*Attorneys for Plaintiff pro se*